O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEISA ELLIOT, individually and on behalf of all others similarly situated,<br><br>                   Plaintiff,<br><br>        v.<br><br>SPHERION PACIFIC WORK, LLC, et al.<br><br>               Defendants. | CV 06-5032 ABC (PLAx)<br><br>ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION |

Pending before the Court are the parties' Cross-Motions for Summary Judgement Or, In The Alternative, For Summary Adjudication ("Motions"), filed on September 10, 2007.  Both Defendant Spherion Pacific Workforce, LLC's ("Defendant") and Plaintiff Leisa Elliot (Plaintiff") filed Oppositions and Replies.  The Court continued the hearing on the Motions several times at the parties' request, and the Motions came on for hearing on August 11, 2008.  Upon consideration of the materials submitted by the parties, the argument of counsel, and the case file, the Court **GRANTS** Defendant's Motion and **DENIES** Plaintiff's Motion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Leisa Elliot ("Plaintiff") brings this class action lawsuit against her former employer Spherion Pacific Workforce, LLC, ("Spherion" or "Defendant"), alleging that Defendant failed to pay her in a timely manner, failed to pay her for time worked, and issued wage statements that did not include all of the information required by law.  Based upon these allegations, Plaintiff asserts the following five causes of action: (1) for continuing wages under California Labor Code ("Labor Code") section 203 based upon violation of Labor Code section 201; (2)  violation of Labor Code sections 510, 558, and 1194 for failure to pay overtime and minimum wage; (3) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, for failure to pay minimum wage; (4) violation of Labor Code section 226 for failure to provide wage statements with all required information; and (5) a claim pursuant to the Private Attorneys General Act of 2004 ("PAGA") for civil penalties based upon the above alleged violations.

Both parties move for summary judgment, asserting that there are no material issues of triable fact requiring trial, and that the undisputed facts established that each is entitled to judgment.  The Court has reviewed the parties' statements of undisputed facts and statements of genuine issues.[1]  Nearly all of the material facts are

---

[1]  The Court will cite primarily to Defendant's Statement of Undisputed Facts ("DSUF").  The Court has also reviewed Plaintiff's Statement of Undisputed Facts ("PSUF").  However, the vast majority of the 36 facts Plaintiff presents are immaterial and/or legal conclusions instead of facts.  Specifically, facts 1-18 are immaterial, and many state legal conclusions in addition to facts. Fact 20 is contradicted by Plaintiff's own sworn testimony; facts 21-23 are immaterial because they assume that fact 20 has been established, and, in any event, state legal conclusions instead of facts.  Fact 24 states a legal conclusion, and facts 25-35 are irrelevant.  Where Plaintiff's facts are material and undisputed (PSUF

indeed undisputed; the parties differ primarily over the legal conclusions that must be drawn from the facts.  The undisputed material facts as follows[2]:

**A.   Background Facts**

Spherion is a staffing company that provides job assignments to temporary/billable employees in California and throughout the United States and Canada.  Spherion supplies workers, both temporary and direct hires, to its clients.  (DSUF 1.)

Spherion recruits and hires it own employees and assigns them to businesses to support or supplement their regular workforces; to provide assistance in special work situations such as employee absences, skill shortages, and seasonal workloads; and to perform special assignments or projects.  (DSUF 4.)

**B.  Facts Relating to Plaintiff's Minimum Wage Claims.**

The typical procedure followed by Spherion when it receives a customer order for temporary help is to first have a Spherion client service representative review the Spherion database to determine which employee's skills and preferences best match the particular customer's needs.  (DSUF 7.)[3]

_____

19, 36), they are incorporated herein.

[2]  Plaintiff argues that many of these facts are disputed. However, instead of directing the Court to conflicting evidence, Plaintiff's efforts consist mostly of argumentative assertions of legal conclusions.  The Court reviewed the evidence and determined that each of the facts stated below is undisputed.  Furthermore, only a few purported disputes merit an explanation of why the "dispute" is not genuine.  Such explanations are provided in footnotes.

[3]  The Court rejects Plaintiff's argument that this fact is disputed.  The evidence Plaintiff's cites does not demonstrate that employees "actively assist" Defendant in securing their placement. Rather, the evidence demonstrates that employees simply keep Defendant

Spherion's representative then contacts the employee, describes the prospective assignment, pay rate, and expected length of assignment.  If the employee accepts the assignment, he or she reports directly to work at Spherion's customer's premises.  (DSUF 8, 9.)[4]

Upon completion of the assignment (or in the case of ongoing assignments, at the completion of each week of work), the employee is required to record the hours worked, as verified by the customer, and submit them to Spherion.  (DSUF 10.)

Spherion uses the temporary employee's record of hours worked to generate the employee's paychecks and customer invoices.  Spherion's temporary employees are paid weekly.  (DSUF 11, 12.)

**C.   Facts Relating to Plaintiff's Claims Under Labor Code sections 201 and 203.**

The nature of employment as a temporary worker with a temporary services employer is that the work is typically intermittent, and temps often have breaks between assignments that can vary from a few days or weeks, to months.  (DSUF 14, 16.)

Spherion's temporary employees generally understand that work assignments they are provided by Spherion are typically not for a definite period of time and, as such, are unpredictable in length, and

---

informed – by email or phone call – of their availability for assignments.  This does not conflict with – and in fact, is consistent with – Defendant's assertion that its client service representatives perform the task of matching up client requests with its employees' skills and preferences.

[4]   The Court rejects Plaintiff's argument that the latter sentence asserts a disputed fact.  There is some evidence that a client may interview Defendant's employee prior to that employee being given the assignment.  However, the evidence indicates that these interviews happened only occasionally. Most importantly, there is no evidence that Plaintiff was ever required to participate in such an interview.  (See DSUF 32.)  The fact as it applies to Plaintiff remains undisputed.

4

1   that they have no expectation of payment immediately upon assignment

2   completion.  (DSUF 22.)[5]

3        Plaintiff has never had a full-time position, but rather "worked

4   a lot of different temp assignments."  (DSUF 23.)  Prior to commencing

5   employment with Spherion in August 2004, Plaintiff worked for at least

6   ten (10) other staffing companies and, as a result, "understood how

7   the temporary assignment process worked."  (DSUF 24.)

8        On August 5, 2004, Plaintiff completed the Spherion application

9   process through Spherion's Warner Bros. on-premises office, in

10  Burbank, California.  (DSUF 26.)  During her employment with Spherion,

11  Plaintiff worked at more than 15 different assignments at Warner

12  Bros., ranging in time from one day to several weeks.  (DSUF 34.)

13  While an employee of Spherion, Plaintiff never interviewed directly

14  with Warner Bros., or for any other Spherion client, for any temporary

15  assignments.  (DSUF 32.)[6]

16       During the entire time period that Plaintiff was employed by

17  Spherion, she always emailed Spherion when she was available for

18  assignments and informed Spherion of her availability for additional

19  assignments.  (DSUF 44.)  When Plaintiff submitted her timesheet for

20  the work she performed on August 22, 2005, she informed Spherion that

21  she was "available for work" the following day.  (DSUF 48.)  At the

22

23        [5]  Plaintiff's citation to sections of the California Labor Code

24  does not dispute this fact.

25        [6]  The Court reviewed the cited portions of Plaintiff's
    deposition.  These portions discuss the process by which Plaintiff

26  received assignments.  In each of the examples, Plaintiff was directed
    to appear at a client's location to begin her assignment.  In none of

27  the examples did Plaintiff state that the assignment process involved
    being interviewed by the client.  The cited deposition testimony

28  therefore supports the fact asserted.

time Plaintiff submitted her timesheet for the work she performed on August 22, 2005, Plaintiff "had no idea that it was going to be [her] last assignment." (DSUF 49.)

As demonstrated by the telephone calls and emails exchanged between Plaintiff and Spherion during August, September, and October 2005, Plaintiff continued to seek additional assignments from Spherion until at least October 15, 2005. (DSUF 45.) Spherion informed Plaintiff on numerous occasions, after August 22, 2005, that it was seeking additional assignments for her. No one from Spherion ever indicated anything to the contrary or informed her that she would not be provided with additional assignments. (DSUF 51, 52.)

Other than on perhaps one occasion, Plaintiff received her compensation from Spherion through direct deposit. (DSUF 55.) In addition to having her compensation direct-deposited into her bank account, Plaintiff always received a hard copy version of her wage statement. (DSUF 56.)

Each week that she was employed by Spherion, Plaintiff followed the same basic procedures to complete the compensation process. After obtaining her Warner Bros. supervisor's approval of her timesheets at the end of each week or assignment, Plaintiff would submit the timesheets to Spherion. Plaintiff typically submitted the completed timesheets on Friday after her final shift of the week ended. (DSUF 60-64; PSUF 19.) By the following Friday, Plaintiff received her direct deposit payment in her bank account. (DSUF 65.)

On September 2, 2005, Plaintiff received her final compensation from Spherion. (DSUF 66.) Because Spherion did not provide Plaintiff with any other temporary assignment thereafter – an outcome that neither Spherion nor Plaintiff knew would transpire at that time – the

September 2, 2005 paycheck turned out to be Spherion's final paycheck to Plaintiff.  (DSUF 67.)

**D.   Facts Relating to Claims that Spherion Issued Insufficient Wage Statements.**

Spherion included an employee identification number on each of Plaintiff's wage statements.  (DSUF 75.)

Spherion included the name and address of Plaintiff's employer on the wage statements.  The wage statemtents refer to "Spherion Pacific Work, LLC."  The full name of Plaintiff's employers is Spherion Pacific Workforce, LLC.  (DSUF 76 and Pl.'s Response to DSUF 76; PSUF 24, 26, 36.)

Each time Plaintiff received her wage statement, she reviewed the document and "always believe[d] it to be correct."  (DSUF 57.)

Plaintiff never complained to anyone at Spherion that she perceived any problems with her wage statement.  (DSUF 58.)

## II.   LEGAL STANDARD

Summary judgment shall be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

If, as here, the non-moving party has the burden of proof at trial, the moving party has no burden to negate the opponent's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party does not have the burden to produce any evidence showing the absence of a genuine issue of material fact.  Id. at 325.  "Instead, . . . the

burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Id. Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading . . . [Rather,] the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added).

A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish the essential elements of that party's case, and on which that party would bear the burden of proof at trial. Celotex, 477 U.S. at 322-23. An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Anderson, 477 U.S. at 250-51. "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. The "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992). The evidence of

1   the nonmovant is to be believed, and all justifiable inferences are to

2   be drawn in favor of the nonmovant. Anderson, 477 U.S. at 255. "On

3   the other hand, the movant's uncontradicted factual allegations

4   ordinarily are accepted." John v. City of El Monte, 505 F.3d 907, 912

5   (9th Cir. 2007). Furthermore, the court must view the evidence

6   presented "through the prism of the substantive evidentiary burden."

7   Anderson, 477 U.S. at 254.

8                              III.   ANALYSIS

9   **A.   Defendant Is Entitled to Judgment on Plaintiff's Claim Under**
        **Labor Code Section 203 (first claim for relief) because**
10      **Defendant's Payments of Wages were Timely Under Labor Code**
        **Section 201.3(b)(1), and Defendant did not "Discharge" Plaintiff**
11      **When Each of her Temporary Assignments Ended.**

12          Plaintiff's first claim is that she is entitled to continuing

13   wages under Labor Code section 203 because Defendant failed to pay her

14   wages within the time period required by Labor Code Section 201.

15   Section 203 provides, in relevant part,

16

17          If an employer willfully fails to pay, without abatement or

18          reduction, in accordance with Section[] 201 . . . any wages of an

19          employee who is discharged or who quits, the wages of the

20          employee shall continue as a penalty.

21

22          Section 201 provides, "If an employer discharges an employee, the

23   wages earned and unpaid at the time of the discharge are due and

24   payable immediately." Plaintiff claims that each time one of her

25   temporary assignments ended, she was "discharged" within the meaning

26   of section 201, thereby triggering Defendant's obligation to

27   "immediately" pay her unpaid wages. Instead of paying Plaintiff's

28   wages "immediately," however, Defendant paid her wages in accord with

                                         9

1    its routine schedule, issuing paychecks each Friday for all hours

2    worked the previous workweek and submitted on timesheets by the Friday

3    of that previous workweek.  There are no allegations that Defendant's

4    routine weekly pay schedule violated the law.  As both parties

5    acknowledge, resolution of Plaintiff's claim turns on whether

6    Defendant "discharged" Plaintiff each time one of her temporary

7    assignments ended, thus entitling her to "immediate" payment of wages

8    under section 201.

9        In its papers, Defendant argued that the California Legislature's

10   passage of California Assembly Bill 1710 demonstrates the

11   Legislature's intent that the end of a temporary assignment in the

12   temporary staffing employment context is not a discharge under Labor

13   Code section 201.  Even though Governor Schwarzenegger vetoed the

14   Bill, Defendant argued that the bill was still probative of

15   legislative intent, especially because the Governor supported the

16   provisions relevant to this case, and vetoed the bill for reasons

17   unrelated to those provisions.  Plaintiff did not challenge

18   Defendant's analysis of the proposed legislation; Plaintiff simply

19   argued that because the Governor vetoed the bill, the Court cannot

20   rely on it to discern legislative intent.

21       However, after briefing on the motions was complete, the

22   Legislature passed another bill addressing this issue, Senate Bill

23   940, which was signed into law by Governor Schwarzenegger on July 22,

24   2008.  As it pertains to this case, SB 940 added section 201.3 to the

25   Labor code, which states, in relevant part:

26

27       201.3(a)(1) "Temporary services employer" means an employing unit

28       that contracts with clients or customers to supply workers to

perform services for the client or customers and that performs
all of the following functions [including negotiating with
clients and customers for the services, assigning workers,
setting the pay rates of workers and paying them from its own
accounts, and retaining the right to hire and fire workers].
201.3(b)(1) Except as provided in paragraphs (2) to (5),
inclusive, if an employee of a temporary services employer is
assigned to work for a client, that employee's wages are due and
payable no less frequently than weekly, regardless of when the
assignment ends, and wages for work performed during any calendar
week shall be due and payable not later than the regular payday
of the following calendar week.   A temporary services employer
shall be deemed to have timely paid wages upon completion of an
assignment if wages are paid in compliance with this subdivision.
. . .(4) If an employee of a temporary services employer is
assigned to work for a client and is discharged by the temporary
services employer or leasing employer, wages are due and payable
as provided in Section 201.

These provisions clearly demonstrate that Plaintiff's claim for
continuing wages fails as a matter of law.   The undisputed facts show
that Defendant is a "temporary services employer" under section
201.3(a)(1).   (DSUF 1, 2, 7-12.)   Defendant also paid Plaintiff
weekly, and not later than the regular payday of the following
calendar week, in accordance with section 201.3(b)(1).   Defendant's
payment of Plaintiff's wages was therefore timely.   The statute also
specifically addresses the issue Plaintiff's claim raises by providing
that, "A temporary services employer shall be deemed to have timely

1  paid wages **upon completion of an assignment** if wages are paid in
2  compliance with this subdivision." (emphasis added).  Thus, the ending
3  of a temporary assignment does not trigger any payment obligations
4  different from those set out in 201.3(b)(1), with which Defendant
5  complied.  Section 201.3(b)(1) further demonstrates the distinction
6  between the "end of a temporary assignment" and a "discharge,"
7  explaining that a discharge still triggers section 201.

8       Furthermore, from the legislative history of section 201.3, it is
9  clear that its enactment effects merely a clarification of existing
10 law, rather than a change in the law.  See Senate Bill Analysis, SB
11 940, at p. 5, available at
12 <http://info.sen.ca.gov/pub/07-08/bill/sen/sb_0901-0950/sb_940_cfa_200
13 80624_160423_sen_floor.html>> (explaining, "This bill clarifies the
14 issue [of when temporary employees are due their wages after an
15 assignment ends] by explicitly stating that an employee of a temporary
16 services employer will be paid weekly, regardless of when the
17 assignment ends. . ."); see also id. p. 6 (characterizing SB 940 as
18 "clarifying that the completion of an assignment by an employee of a
19 temporary services employer is not a discharge. . .")  Thus, because
20 section 201.3 is a mere clarification of existing law, it raises no
21 concerns about retroactive application in this case.

22      Even had section 201.3 not been enacted, it is still clear that
23 Plaintiff was not "discharged" from her employment with Defendant each
24 time one of her temporary assignments ended.  The nature of
25 Plaintiff's job as a temp with a temporary services employer was that
26 her work would be intermittent; indeed, temps often have breaks
27 between assignments that can vary from a few days or weeks, to months.
28 (DSUF 14, 16.)  Defendant's employees do not expect payment

immediately upon assignment completion.  (DSUF 22.)  From her previous experience as a temp worker for at least ten other staffing companies, Plaintiff also understood that this was how Defendant's assignment process worked.  (DSUF 23-24.)  Based upon these facts, Plaintiff's employment with Defendant included, by definition, the likelihood of having time between assignments when she would not be working. Plaintiff understood this.  (DSUF 24.)  The various communications between Plaintiff and Defendant in which Plaintiff kept Defendant informed of her availability and Defendant indicated it was looking for assignments for Plaintiff (DSUF 44, 45) also demonstrate that between assignments, both parties still considered Plaintiff to be Defendant's employee.

Finally, none of the authorities to which Plaintiff cites persuade the Court that Plaintiff was "discharged" from Defendant's employ each time one of her temporary assignments ended.  For example, in Smith v. Superior Court (L'Oreal), 39 Cal. 4th 77 (2006) the California Supreme Court addressed the application of sections 201 through 203 to an employee who was hired for a one-day job as a hair model.  In L'Oreal, the parties' express understanding was that the plaintiff's employment would end upon her completion of the one-day assignment.  Based upon that fact, the Court determined that the plaintiff was "discharged" when her one-day assignment ended.  Thus, the L'Oreal Court had no occasion to discuss whether the end of an assignment for a temporary employee of a temporary staffing agency rendered the employee "discharged" within the meaning of section 201. Finally, insofar as it was unclear how L'Oreal's discussion of section 201 might have been applied to temporary services employees, SB 940 clarified this issue.  See Senate Bill Analysis, SB 940, at p. 4-5

13

1  (explaining that the bill's purpose is to address concerns that

2  L'Oreal may be applied too broadly to the temporary services context.)

3       Notwithstanding the legislative clarification, L'Oreal's general

4  guidance for determining when an employee is "discharged" under

5  section 201 is still instructive in this case and supports the

6  conclusion that Plaintiff was not "discharged."  In construing the

7  term "discharge," the L'Oreal Court stated that a "commonly understood

8  meaning of 'discharge' includes the **action of an employer** who, having

9  hired an employee to work on a particular job or for a specific term

10 of service, **formally releases the employee and ends the employment**

11 **relationship** at the point the job or service term is deemed complete."

12 L'Oreal, 39 Cal.4th at 84 (emphasis added).  Here, as a factual

13 matter, Defendant took no action to formally release Plaintiff and end

14 the employment relationship each time one of Plaintiff's temporary

15 assignments ended.  Instead, the evidence shows that, at all relevant

16 times, Defendant and Plaintiff maintained a continuous employer-

17 employee relationship even when Plaintiff was not engaged in an

18 assignment.

19      For the foregoing reasons, Defendant is entitled to judgment on

20 Plaintiff's first cause of action for continuing wages under Labor

21 Code section 203.

22 **B.   Defendant Is Entitled to Judgment on Plaintiff's Claim Under**
   **Labor Code Sections 510, 558, and 1194 (second claim for relief)**
23 **and her Claim Under FLSA Section 206 (third claim for relief)**
   **Because there is No Evidence that Defendant Failed to Pay**
24 **Plaintiff for Hours she Worked.**

25      Plaintiff's second and third claims for relief for violation of

26 minimum wage requirements assert that Defendant failed to pay her for

27 hours worked.  The FAC does not include factual allegations specifying

28 the circumstances supporting the claim.  However, the parties' papers

make clear that Plaintiff is seeking compensation (1) for time worked reviewing and completing paperwork around the beginning of her employment with Defendant, and (2) for time spent "actively searching" for new assignments.  (Pl.'s Opp'n 7:18-22, 14:27-15:5; Pl.'s Mot. 6:22-24.)[7]  Plaintiff has failed to raise a triable issue of material fact on either basis for this claim.

Plaintiff testified at deposition that, with perhaps one exception, Defendant always paid her through direct deposit, and that she reviewed a hard copy of each and every wage statement she received and always believed each one to be correct, including with regard to her compensation.  (DSUF 57; Def.'s Resp. PSUF 20.)  Furthermore, Plaintiff admitted that the amounts Defendant paid her were based on timesheets she personally completed, and that the paychecks always included the amounts Plaintiff herself recorded on her timesheets.  (Def.'s Response to PSUF 20.)  Finally, Plaintiff never complained to anyone at Defendant that there was any problem with her wage statement.  (DSUF 58.)  These admissions foreclose Plaintiff's current claims that Defendant failed to pay her for time she worked.

In her declaration, Plaintiff attempts to raise a genuine issue of fact as to wages due her for orientation, stating conclusorily that

_____

[7]   In her own Motion, Plaintiff appears to have abandoned this claim to the extent it is based on "actively searching" for new assignments: her brief addresses only the one hour of orientation, and her statement of facts recites only two facts in support of this claim, both relating to the one hour of orientation.  Because Plaintiff also states that resolution of the entirety of her motion in her favor would leave nothing remaining for trial, see Pl.'s Mot. 2:15-17, the Court deems Plaintiff to have abandoned her claim based on Defendant's alleged failure to pay her for time spent "actively searching" for work between assignments.  The Court will nevertheless address the claim on its merits because it was raised in Defendant's Motion.

she was never paid for one hour she spent on the orientation paperwork
at the start of her employment.  (Elliot Decl. ¶ 4.)  However, this
late-breaking assertion contradicts Plaintiff's earlier sworn
testimony, summarized above, to the effect that she received all of
her wages.  Plaintiff makes no attempt to reconcile her testimony with
her current statement, nor does she present any evidence that she was
not compensated for this time other than her conclusory allegation.
This unsubstantiated and contradictory statement is ineffective to
raise a triable issue of fact.  See <u>Kennedy v. Allied Mut. Ins. Co.</u>,
952 F. 2d 262, 266 (9th Cir. 1991) (holding that party cannot create
issue of material fact with an affidavit contradicting the party's own
prior deposition testimony).

For the same reason – that it contradicts her prior sworn
testimony – Plaintiff's contention that she was owed compensation for
"work [she] engaged in between temporary placements" (Pl.'s Opp'n
15:3-5) fails to raise a genuine issue of material fact.  This
contention fails for the additional reason that the only evidence
supporting Plaintiff's claim is that she contacted Defendant from time
to time simply to inform Defendant of her availability between
temporary assignments.  Plaintiff points to no evidence – such as her
own deposition testimony – that her efforts to "actively search" for
new assignments consisted of anything more than these *de minimis*
contacts with Defendant to keep Defendant updated on her availability.
For example, to "actively search" for new assignments might have
involved interviewing with Defendant's clients.  Indeed, Plaintiff's
Motion baldly asserts that "she was not paid for the time spent
interviewing for temporary assignments with Defendant's client, Warner
Bros." (Pl.'s Mot. 1:24-25.)  However, glaringly absent from

Plaintiff's Motion is <u>any</u> citation to <u>any</u> evidence showing that she did, in fact, interview with Warner Bros. or any of Defendant's other clients.  Indeed, Plaintiff's assertion that she "interviewed" is flatly disproved by the evidence cited in the parties' papers, none of which shows that Plaintiff had to interview with any of Defendant's clients.  (DSUF 32.)  Plaintiff makes no other allegations as to what this "active searching" might have entailed, nor has she pointed to any evidence of "active searching" she might have actually done; nor has she pointed to evidence of any between-assignment work other than her *de minimis* communications with Defendant.

For the foregoing reasons, Plaintiff has failed to raise a triable issue of fact on her claim that she was denied wages for hours worked.  Defendant is therefore entitled to judgment on Plaintiff's second and third claims for relief.

**C. Defendant Is Entitled to Judgment on Plaintiff's Claim Under Labor Code Section 226 (fourth claim for relief) for Failing to Provide Required Information on Wage Statements.**

Plaintiff's fourth claim alleges that Defendant's wage statements failed to include information that Labor Code section 226 required to be included.  Plaintiff's FAC specifies that the wage statements "violate the law by failing to provide the social security number of the employee, and name and address of the legal entity that is the employer" (FAC ¶ 34) in violation of sections 226(a)(7) and (8). Defendant moves for judgment as to each of these alleged violations; Plaintiff moves for judgment only as to Defendant's alleged failure to state the employer's name on the wage statements.[8]

---

[8]  Because Plaintiff also states that resolution of the entirety of her motion in her favor would leave nothing remaining for trial, see Pl.'s Mot. 2:15-17, the Court deems Plaintiff to have abandoned

1    Defendant does not contest that Plaintiff's social security
2    number was not shown on her wage statements, but argues that it did
3    not violate the law by this omission.  Specifically, Defendant
4    contends that, in lieu of her social security number, it showed
5    Plaintiff's employee identification number on each of her wage
6    statements, as permitted by Labor Code section 226(a)(7).

7    Plaintiff argues, however, that section 226(a)(7) did not become
8    effective until January 1, 2005.  As such, Plaintiff argues, every
9    wage statement she received prior to January 1, 2005, violated section
10   226(a)(7) because it failed to include her social security number and
11   the alternative of using the employee identification number was not
12   yet available.

13   However, the one-year statute of limitations set forth in Cal.
14   Code Civ. Proc. section 340 applies to Plaintiff's claims under this
15   section because she is seeking "penalties."[9]  Because Plaintiff filed
16   her Complaint on July 13, 2006, her claims under section 226 apply
17   only to wage statements provided to her on or after July 13, 2005.
18   Accordingly, none of the wage statements Plaintiff received prior to

19

20   her claim based on the alleged failure to include her social security
21   number on the wage statements.  The Court will nevertheless address
     the claim on its merits because it was raised in Defendant's Motion.
22

23        [9]  It is clear that Plaintiff's claim under section 226 is
     limited to statutory "penalties" because there is absolutely no
24   evidence that she suffered any actual harm or damages.  As such, Cal.
     Code Civ. Proc. section 340 applies and the claim is subject to a one-
25   year statute of limitations.  In addition, although Plaintiff
     challenged the application of section 340 by stating "the issue is
26   nowhere near as clear-cut as Defendant contends," Plaintiff's response
     is wholly superficial.  For example, Plaintiff fails to assert an
27   alternative theory as to what statute of limitations applies to this
     claim.  As such, Plaintiff has, in effect, waived argument on the
28   issue.

18

January 1, 2005, are relevant to this component of her claim.  Because it is undisputed that all the wage statements provided to Plaintiff after July 13, 2005 included her employee number (DSUF 75), there is no disputed issue of material fact regarding whether Defendant complied with section 226(a)(7).  Defendant is entitled to judgment.

The facts relating to Defendant's alleged failure to include the name of Plaintiff's employer on the wage statements are also undisputed.  Defendant included the name and address of Plaintiff's employer on the wage statements.  However, although the wage statements refer to "Spherion Pacific Work, LLC," the full name of Plaintiff's employer is "Spherion Pacific Workforce, LLC."  (DSUF 76 and Pl.'s Response to DSUF 76; PSUF 24, 26, 36.)  The Court notes that, insofar as Plaintiff may have been asserting a claim that Defendant failed to include its address on the wage statements, she has wholly abandoned that claim: in response to Defendant's fact 76, she concedes that the wage statements included the address because she only contests that fact as it relates to her employer's name.  Thus, the issue is whether, by referring to itself on the wage statements with the truncated name "Spherion Pacific Work, LLC," rather than with its complete name "Spherion Pacific Workforce, LLC," Defendant violated section 226(a)(8).

Section 226(a)(8) states that an employer must include on its wage statements "the name and address of the legal entity that is the employer."  There is no dispute that Defendant was the "legal entity" that was Plaintiff's employer, and that Defendant indicated its name on the wage statements, albeit in a slightly truncated form.  Defendant did not violate this section merely by slightly truncating its name on the wage statements.  If the legislature had intended to

19

require an employer to show its complete name on wage statements, it would have stated so in this section.  Indeed, the specificity required in the remainder of section 226(a) – requiring, for example, various subcategories of information relating to pay rates, hours worked, and deductions – demonstrates that, when the legislature drafted this statute, it well knew how to require highly detailed information on wage statements.  By contrast, instead of requiring an employer to state its "complete" or "registered" name, section 226(a)(8) only requires the employer to state its "name and address."  Because Defendant was the "legal entity" that employed Plaintiff, and because Defendant showed its "name and address," Defendant complied with section 226(a)(8).

The scant case law applying section 226(a)(8) does not dissuade the Court from this conclusion.  The only case the parties cited applying this subsection is Cicairos v. Summit Logistics, Inc., 133 Cal. App. 4th 949 (2005).  In Cicairos, the Court reversed the trial court's grant of summary judgment for the employer on several employment-related claims, including a claim under section 226(a)(8) for failing to show the employer's name and address on wage statements.  However, in Cicairos, the documents that the employer contended were proper wage statements were fraught with "anomalies and confusing elements" insofar as they purported to itemize the hours the employee worked, and they completely lacked the employer's name and address.  Cicairos, 133 Cal. App. 4th at 960-961.  The employer argued that other documents called "driver trip summaries" remedied the deficiencies in the wage statements, including the violation of section 226(a)(8).  The Court disagreed.  On their face, the "driver trip summaries" did not give an accurate report of the hours the

employee worked.   Furthermore, instead of showing the employer's name, which was "Summit Logistics, Inc.", the "driver trip summaries" merely included the word "SUMMIT" in a logo at the top.   Not surprisingly, the Court found that the employer's use of one word in a logo on the top of "driver trip summaries" was insufficient to show on wage statements "the name [] of the legal entity that is the employer." The "driver trip summaries" also lacked the employer's address.   The employer thus violated both components of section 226(a)(8).

Here, by contrast, far from relying on one word in a mere logo on the top of documents that are not even wage statements, Defendant referred to itself in plain text, in the body of its wage statements, along with its address, thus clearly identifying itself as the employer.   <u>Cicairos</u> is therefore factually distinguishable.   Of course, an employer using a shortened name or abbreviation that renders the name confusing or unintelligible may be violating section 226(a)(8).   However, this is not such a case.   As a matter of law, Defendant's self-identification on the wage statements is sufficient to satisfy section 226(a)(8).

Furthermore, even if Defendant's use of a slightly-truncated name on its wage statements may be viewed as a technical violation of section 226(a)(8), Plaintiff cannot recover for these violations because she did not "suffer injury" as a result.   Section 226(e) sets forth the conditions under which an employee can recover monetary damages for violations of section 226(a):

226(e) An employee **suffering injury** as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty

1    dollars ($50) for the initial pay period in which a violation

2    occurs and one hundred dollars ($100) per employee for each

3    violation in a subsequent pay period, not exceeding an aggregate

4    penalty of four thousand dollars ($4,000), and is entitled to an

5    award of costs and reasonable attorney's fees. (emphasis added.)

6

7        Plaintiff argues that any violation of section 226(a)

8    automatically triggers an employee's entitlement to damages and/or

9    penalties under section 226(e).  However, this reading of section

10    226(e) ignores its plain language, which includes "suffering injury"

11    as a prerequisite for an employee's recovery of damages or penalties

12    for an employer's failure to comply with section 226(a).  California

13    courts consistently distinguish between a defendant's misconduct, on

14    one hand, and a plaintiff's injury on the other.  See, e.g., Steketee

15    v. Lintz, Williams & Rothberg, 38 Cal. 3d 46, 54 (1985) (stating that

16    "'Wrongful act' and 'injury' are not synonymous.  The word 'injury'

17    signifies both the negligent cause and the damaging effect of the

18    alleged wrongful act and not the act itself.") (citations omitted);

19    Lueter v, State of Cal., 94 Cal. App. 4th 1285, 1303 (2002) ("'Injury'

20    refers to the fact of harm suffered by the plaintiff due to the

21    defendant's conduct.")  By employing the term "suffering injury," the

22    statute clearly requires that an employee is not eligible to recover

23    for violations of section 226(a) unless he or she demonstrates some

24    injury from the employer's violation.

25        Plaintiff's proposed construction effectively excises the phrase

26    "suffering injury" from section 226(e).  It therefore violates the

27    canons of statutory construction requiring the Court to "give effect

28    to statutes according to the usual, ordinary import of the language

used in framing. . . [to] give significance [] to every word, phrase,
sentence and part of an act. . . [and avoiding] a construction making
some words surplusage." <u>Steketee</u>, 38 Cal. 3d at 51.  Had the
legislature intended to expose an employer to liability for violations
regardless of whether any employee suffered injury, it could have
drafted the statute to read, "Any employee whose employer fails to
comply with subdivision (a) is entitled to recover. . ."  Instead, the
Legislature drafted the provision with the qualification that an
"employee **suffering injury**" may recover for violations.

The cases Plaintiff cites do not counsel a different result. <u>See</u>,
<u>e.g.</u>, Pl.'s Reply at 19:1-21:22, discussing <u>Zavala v. Scott Bros.</u>
<u>Dairy, Inc.</u>, 143 Cal. App. 4th 585 (2006); <u>Wang v. Chinese Daily News,</u>
<u>Inc.</u>, 435 F. Supp. 2d 1042 (C.D. Cal. 2006); and <u>Perez v. Safety-Kleen</u>
<u>Sys.</u>, 2007 U.S. Dist. LEXIS 48308 (N.D. Cal. filed June 27, 2007).
Each of these cases involved wage statements that failed to comply
with the subsections of section 226(a) relating to itemizing pay
rates, hours worked, and deductions.  In each instance, the court
identified some specific injury caused by the inaccuracy.  These
injuries included the possibility of not being paid overtime, employee
confusion over whether they received all wages owed them, difficulty
and expense involved in reconstructing pay records, and forcing
employees to make mathematical computations to analyze whether the
wages paid in fact compensated them for all hours worked.  Thus, each
of the cases upon which Plaintiff relies for her argument that she
need not show "injury" in fact involved some form of injury, ranging
from actual lost wages, to the possibility of lost wages and
confusion.  There is no evidence whatsoever that Plaintiff here
"suffered injury" of any sort due to Defendant's use of a slightly

1   truncated name on the wage statements it issued to Plaintiff.

2   Plaintiff has failed to show a triable issue of fact on this claim,

3   and Defendant is entitled to judgment.

4        As both parties recognize, Plaintiff's claim under the Private

5   Attorneys General Act is wholly dependent upon her other claims.

6   Because all of Plaintiff's other claims fail as a matter of law, so

7   does her PAGA claim.  Defendant is therefore entitled to judgment on

8   Plaintiff's fifth claim for relief.

9                        **IV.   CONCLUSION**

10       For the foregoing reasons, the Court hereby **GRANTS** Defendant's

11  Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary

12  Judgment.

13       **SO ORDERED.**

14  **DATED:      August 13, 2008**

15

16                        _____
                                   **AUDREY B. COLLINS**
                           **UNITED STATES DISTRICT JUDGE**

17

18

19

20

21

22

23

24

25

26

27

28